16466

VIRGINIA HOTEL CO. v. DUSENBERRY

(63 S. E. (2d) 483)

*Mr. J. Wilbur Hicks,* of Greenville, *for Appellant,*

526

*Messrs. Leatherwood, Walker* and *Mann*, of Greenville, *for Respondents,*

February 14, 1951.

PER CURIAM.

The appellant (who will hereinafter be referred to as the defendant) advanced to the respondent, W. R. McAllister (who with the other respondents will be hereinafter sometimes referred to as the plaintiffs), the sum of two thousand dollars to enable McAllister to purchase the unexpired portion of a lease covering property in the City of Greenville, South Carolina, known as the Virginia Hotel. The transaction was evidenced by an interest bearing note in said amount made by McAllister to the defendant. At the time the note was given, McAllister executed and delivered to the defendant an instrument under the terms of which one-half of the operating profits of the hotel were to be paid to him. The precise nature and legal effect of this agreement is the primary matter involved in this appeal.

The evidence discloses that out of one-half of the net earnings of the operation of the hotel the defendant has received repayment of the advance of two thousand dollars made by him, and in addition, considerably more than a legal interest thereon. He contends that he is entitled at his option to continue to receive one-half of the net operating earnings of the hotel for the full unexpired term of the lease.

The plaintiffs contend that under a proper interpretation of the agreement between the parties the defendant was entitled to receive one-half of the net operating profits of

the hotel only until the amount advanced by him, including interest, had been paid. On this theory they claim that the amount recieved by the defendant having already exceeded the amount of the advance with interest, they are under no further obligation to divide the profits of the hotel operations with the defendant.

The following is a more detailed statement of the case:

One Bell, who is not a party to the suit, had a lease on the Virginia Hotel property. The lease expired in 1942. McAllister desired to obtain a lease on the hotel property upon the expiration of the Bell lease, but failed in his efforts. Bell obtained for himself a twelve year renewal of the lease.

In June, 1943, McAllister agreed with Bell to purchase the unexpired portion of the lease, to run approximately eleven years, for the sum of two thousand dollars. Not having the funds with which to make the purchase, McAllister requested the defendant to advance the money.

McAllister and the defendant had been friends over a long period of years. The defendant had made a number of loans to McAllister over the years, charging no interest for the same, but always obtaining repayment in full. In this instance, however, the defendant felt that he should be protected for his two thousand dollar advancement or loan. He did not want to incur the risks of a partnership, and in fact, for reasons stated by him, he did not care to get mixed up in the hotel business. He consulted a local lawyer about the proposition and as a result of such consultation the agreement between the parties relating to the division of earnings of the hotel was entered into. Since the whole controversy revolves around the interpretation of this agreement it is quoted in full.

"State of South Carolina

"County of Greenville

"Whereas W. R. McAllister is *indebted* to James A. Dusenberry in the sum of $2,000.00, *evidenced by a promissory note of even date herewith* and,

"Whereas, said W. R. McAllister is going to resume operation of the Virginia Hotel in Greenville, S. C. and is desirous of *securing said James A. Dusenberry for the payment of said note, including interest.*

"Now, Therefore, I. W. R. McAllister do hereby assign, transfer, and set over to said James A. Dusenberry, his heirs, executors, administrators or assigns, one-half of the profits derived from the operation of said Virginia Hotel, said profits to be arrived at by first paying all expenses and then taking one-half of the remainder.

"It Is Understood and agreed that said W. R. McAllister and James A. Dusenberry will have settlement on the first day of each and every month, beginning August 1, 1943, and the payments herein provided for shall be made on the first day of each and every month, *and that said payments hereunder will be made as long as there is any balance remaining unpaid on said $2,000.00 note, with interest thereon,* and until this agreement is terminated at the option of said James A. Dusenberry.

"This agreement is binding upon the said W. R. McAllister, his heirs, executors, administrators or assigns.

"It Is Further Understood and agreed that said James A. Dusenberry shall have the right in person or by agent to inspect the books of said Virginia Hotel at any time during regular business hours while this agreement is in force and until same is terminated as herein provided.

"In Witness Whereof, I have hereunto set my hand and seal this 20th day of July, 1943.

"In The Presence Of:

W. R. McAllister, L. S.

"Pearl Swealman

"S. E. Collins, Jr."

(Emphasis added. The portions in italics are those which we think have a controlling bearing upon the issues.)

The loan in question was repaid to appellant from one-half of the profits realized from the operation of said business, appellant contending that the balance on the loan was paid in June, 1944, respondents contending that the balance was paid in February, 1945. (The difference in the dates as claimed by the respective parties that the note was paid in full may be by reason of the respondents calculating interest on the $2,000.00, whereas the appellant's testimony is that he had never charged the respondent, W. R. McAllister, interest on this or the other numerous loans shown by the record to have been made to said respondent by said appellant.) But contrary to the position of McAllister as taken in this case, McAllister continued to pay over to the defendant each month, one-half of the net earnings, until some time in 1948, with the result, as already stated.

In March, 1948, McAllister suffered a paralytic stroke, and thereafter was unable to give proper attention to his business. His wife, one of the respondents, then stepped into the picture to continue the operation of the hotel, and having discovered the facts above set forth as to the repayment of the loan and the receipt by the defendant of considerable more of profit out of the transaction, she refused to make any further payments to the defendant.

In October, 1944, McAllister and his wife had formed a corporation to take over the operation of the hotel. These two were the sole stockholders, officers and directors of the corporation. But the lease was never assigned to the corporation and the bank account continued to be carried as previously, in the name of McAllister.

Prior to the refusal of Mrs. McAllister in 1948 to continue the making of additional payments to the defendant, the latter suggested that because of the physical incapacity of McAllister, the bank account for the hotel operation be carried in the name of the corporation. Either on his own

initiative or on the suggestion of the bank, the change was made with the added feature that all checks drawn on the account shall be signed jointly by Mrs. McAllister and by the defendant.

It was about this time that Mrs. McAllister discontinued making deposits in the hotel corporation account and opened a new account in the name of her husband, to which she had access under a power of attorney.

Following demands by the defendant upon Mrs. McAllister that she continue to pay to him each month the one-half of the net operating revenues of the hotel, and the refusal of Mrs. McAllister to meet such demands, the present suit was brought by the Virginia Hotel Corporation and Mr. and Mrs. McAllister against the defendant for an order enjoining the defendant from interfering with the operation of the hotel and from collecting or attempting to collect any profits accruing from the operation of the hotel. Further relief asked is that the defendant be required to account "for all moneys wrongfully and unlawfully collected from plaintiffs or either of them" and for general relief.

The answer admits the allegations of the complaint respecting the amount of the advancement, the making of the note and agreement as hereinabove set forth, and the payment to the defendant, each month, until 1948, of one-half of the net operating earnings of the hotel. As to the excess of the payments made to the defendant, the answer alleges that such payments were made "freely, voluntarily, without solicitation or pressure, and in full recognition of defendant's rights under his agreement." It is further alleged in the answer that the defendant is informed and believes that some of the accounts rendered to him are incorrect; that other accountings have been withheld; and that plaintiffs will be due him large sums of money when a proper accounting is had.

The relief prayed by the defendant is that an accounting be had to determine the rights of all parties concerned; for

judgment for any amount found to be due the defendant; and for general relief.

By agreement of counsel the matter of the accountings between the parties was deferred, and the hearing of the case limited for the present to the construction of the agreement above referred to and the determination of the rights of the parties under the construction so arrived at. Argument on a demurrer to the complaint, and on a motion to strike portions of the complaint was likewise deferred because it was recognized that these proceedings relate primarily to matters of accounting.

The testimony of the parties was taken and the Court below made the following rulings: (1) that the written agreement between the parties for a division of the net earnings of the hotel is ambiguous and that accordingly parol testimony was admissible to determine the intention of the parties and the true meaning of the instrument; (2) that as properly construed the agreement entitled the defendant to one-half of the net operating profits of the hotel only until the amount advanced by the defendant, with interest, had been repaid; (3) that, however, the payments made by the plaintiffs to the defendant in excess of the amount advanced by the defendant with interest are not recoverable, because the same were made voluntarily, without any fraud on the part of the defendant.

From the first two holdings so made the defendant has appealed, raising by his exceptions three issues, to wit: (1) that under a proper construction of the agreement the defendant is entitled to continue to receive one-half of the net earnings of the hotel as "a clear profit to appellant as a reward for his accommodation and risk in the venture"; (2) that there was mutuality in the contract as construed by the defendant and that therefore, contrary to the holding of the Couny Judge, the defendant alone had the right to terminate it after the payment of the two thousand dollars of indebtedness; and (3) that the County Court should have held that

the defendant is entitled to an accounting for the purpose of determining the amount, if any, due the defendant.

The plaintiffs have not excepted to that portion of the order of the Court below which denies to the plaintiffs the right of recovery of any excess payments made by them.

As clearly appears from the foregoing, the basic question before the Court is whether the agreement between the parties constituted security for the payment of the two thousand dollars advanced by the defendant, with interest, or whether, as contended by the defendant, the agreement was not *security* for a *loan*, but was a contractual inducement to him to make the advance with the risk of loss if the one-half of the net operating profits would be insufficient to pay the loan and interest, and with an opportunity, on the other hand, to the defendant to make a profit by reason of his participation in the venture.

We agree with the Court below that the contract is ambiguous, and that therefore parol testimony was admissible for the purpose of arriving at the intention and purpose of the parties. On its face the language of the contract is conflicting, as indicated by the italicized portions, in that the agreement recites that it is made to secure the defendant for the payment of the note received by him, including interest, and then proceeds to assign to the defendant, without any time limitation, one-half of the profits derived from the operation of the hotel, with accountings to be made monthly. Then this inconsistency is accentuated by the further provision of the agreement that the monthly division of earnings shall be made "until this agreement is terminated at the option of James A. Dusenberry."

The continuance of the payments to the defendant over a period of years following the discharge of the note out of the profits, raises a very strong inference that whatever the legal significance and effect of the agreement may be judicially held to be, the parties themselves did in fact, until some time in 1948, so construe the agreement

as to call for a continuance of the payments beyond the time when the debt shall have been discharged. But of course this practice of the parties cannot bind the plaintiffs to the continuance of the payments beyond the time of the last payment actually made, if it be concluded by us that the agreement was merely security for the repayment of the note, and not the vesting in the defendant of a one-half interest, with no limit as to time or amount, in the earnings of the hotel.

A further ambiguity in the agreement, in the light of defendant's positions here, is that there is no indication in the agreement as to whether the two thousand dollars of indebtedness shall be taken out of the earnings of the hotel before any division is made, or out of the one-half of the earnings assigned to the defendant. As already stated, payments were in fact continued until some time in 1948, at which time a considerable sum in excess of the two thousand dollar loan had been paid to the defendant on the apparent understanding of both parties that the agreement should be so construed as to provide for the payment of the two thousand dollar note out of the defendant's share of the profits. This practical construction of the agreement by the parties themselves, involving an interpolation therein of a provision to the effect that the two thousand dollar loan shall be first paid out of the one-half of the profits assigned to the defendant, is not one that this Court is disposed to disturb.

Construed in the light of the foregoing the agreement between the parties is itself explicit to the effect that the transaction involved a *debt* from McAllister to the defendant, in the precise amount of two thousand dollars, evidenced by a promissory note, and that the sole object of the agreement was to secure the defendant "for the payment of said note, including interest."

To carry out this purpose, the agreement assigns to the defendant without specific limitation one-half of the profits derived from the operation of the hotel, but the failure of this portion of the agreement to limit the division of profits

to the time when the note shall have been paid in full, with interest, loses all significance when it is considered that where intangible collateral is given to secure a note, it is common practice to make a general assignment of the collateral, without indicating the intention of both debtor and creditor that the assignment is made only to the extent necessary to satisfy the obligation for which the security is given. Thus, if one borrows a thousand dollars on the security of a bond and mortgage for a larger amount held by the debtor, there could be no doubt about the fact that the generality of the terms of the assignment is limited by implication to the protection only of the debt secured, with interest thereon.

But there are in the agreement two definite references to this phase of the intended agreement of the parties. One is that payment shall continue "as long as there is any balance remaining unpaid on said two thousand dollar note, with interest thereon."

The next clause of the agreement to the effect that it shall continue in effect until "terminated at the option of said James A. Dusenberry" doubtless has reference to the testimony of the defendant himself that he did not want to get "mixed up" with the people who ran the hotel. "* * * they had a lot of trouble up there with the owners of the hotel and the operators of the hotel and I don't want to get mixed up with them." On this account the defendant evidently wanted to be very sure that the agreement could not be so construed as to require him to look to the profits of the hotel for repayment; he wanted to be sure to be able to call for payment of the note according to its terms, independently of the security he was taking for the same.

That the transaction in question did not involve a partnership between the parties is clear. Nor does it have any of the characteristics of a joint adventure. See, 48 C. J. S., Joint Adventures, § 1, page 804. The defendant himself disclaims this. He relied for payment, not upon the assignment of profits, but upon the credit and integ-

rity of the borrower, apparently basing his confidence upon a course of dealing over the years that justified the belief that he would be able to and would pay the obligation independently of the security, if the security proved inadequate. The defendant himself testified to quite a number of transactions between him and McAllister, from the period August, 1943, until some time in 1947, involving the loan of money by the defendant to McAllister and the repayment of same.

In the agreed statement the advance of the money by the defendant is described as a "loan" to be repaid out of the profits realized from the operation of the business, and the defendant again goes on record as to the description of the transaction by referring to it in his exceptions as a "loan." He says: "Dusenberry paid McAllister nothing by way of purchase of an interest in the lease by way of partnership or otherwise. Dusenberry's testimony repudiates the idea of an intended partnership. He was not to go in business with McAllister, was not to be responsible for any of the debts of the hotel."

In the defendant's answer, too, the transaction is described as having created an "indebtedness." And again: "If defendant has been in any manner overpaid by one red cent, he stands ready, willing and anxious to account therefore and make refund thereof * * *." Obviously, if it had not been the definite intention of the parties that the payments out of the profits should continue only until the note and the interest thereon were paid, there could be no question of overpayment because in that event the defendant would have been entitled to continue to receive the payments from the profits indefinitely, until voluntarily discontinued by him or until the termination of the lease period.

This testimony of the defendant is pertinent also:

"Q. And was it, or not, distinctly understood at the time that you were lending him two thousand dollars? A. I was furnishing two thousand dollars for half of the profits of the Virginia Hotel.

"Q. And was it, or not, a loan? A. Well, in a way, it was a loan.

"Q. You did take a note? A. I took a note."

Aside from the above stated considerations, the agreement in question probably would be tainted with usury and for that reason would be unenforceable by the defendant, if the construction for which the defendant contends were upheld.

A court of equity will look through the form of a transaction to its substance. Notwithstanding the words used, if it appears that the form of the transaction is a disguise under which usurious interest may be exacted, the transaction will be held to be usurious and to the extent of the usury agreed to be paid will not be enforced.

"When, for any cause whatever, the principal sum loaned or any part thereof is put in hazard, the lender may lawfully require for the risk incurred as large a sum as may be agreed upon in good faith. However, a mere colorable hazard will not prevent excessive interest charges from being usurious. Thus, neither the possibility that bonds purchased at a heavy discount with depreciated currency may be at maturity in currency still more depreciated, nor the fact that the thing loaned may possibly depreciate in value before the time of repayment, nor the risk of loss through the borrower's insolvency or death will justify the taking of more than the legal rate of interest." 66 C. J., pp. 194-195. See also, 55 Am. Jur., Usury, Section 55.

But we prefer to rest our decision upon the above stated construction of the agreement as necessitated by the testimony and by the terms of the agreement itself.

A number of witnesses testified on behalf of the defendant that McAllister made statements to them to the general effect that the defendant was a partner in the business. But this testimony cannot overcome the disclaimer of the partnership status by the defendant himself. ·

Judgment affirmed.